UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIN CARTER | CIVIL ACTION |
| VERSUS | NO. 19-9651 |
| ST. TAMMANY PARISH SCHOOL BOARD, *et al.* | SECTION M (1) |

**ORDER & REASONS**

Before the Court is the motion of defendants St. Tammany Parish School Board (the "School Board") and Amy T. Burns (together, "Defendants") for summary judgment.[1] Plaintiff Erin Carter opposes the motion.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion for summary judgment and dismissing the case with prejudice.

**I. BACKGROUND**

This case arises from an alleged wrongful termination in violation of the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). Carter allegedly suffers from chronic migraines which impedes her ability to work. In 2012, the School Board hired Carter as a teacher.[3] Her employment with the School Board was governed by a collective bargaining agreement (the "CBA") entered into by the School Board and the St. Tammany Federation of Teachers and School Employees.[4] Defendants maintain that every employee, including Carter, received a copy of this agreement.[5]

---

[1] R. Doc. 37.

[2] R. Doc. 41.

[3] R. Docs. 1 at 2; 8 at 4; 37-4 at 12.

[4] R. Doc. 37-3 at 1-2.

[5] *Id.* at 2. In her memorandum in opposition, Carter states that she never received a copy of the CBA. R. Doc. 41-1 at 2. Carter's unsworn opposition, however, cannot be considered as summary judgment evidence. Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a

By her own request, Carter transferred to Pitcher Junior High in Covington, Louisiana, for the 2015-2016 school year.[6] Despite her lack of experience in the sport, Carter agreed to sponsor the dance team during her first year.[7] For the 2016-2017 school year, Carter was assigned to teach seventh grade math and sponsor the dance team.[8] Once the school year commenced, she learned she was also assigned to teach the class, "Journeys to Career."[9] The School Board did not assign a paraprofessional to the Journeys to Career class even though Carter alleges that "[t]he students in this class were classified as 'mild to moderate,' which required them to have a para-professional assigned to each classroom that these students were in."[10] Carter says she made repeated requests for a paraprofessional to be assigned to help her in the classroom.[11] The School Board responded that paraprofessionals are assigned based on the needs of the students outlined in their individualized education plans.[12]

Carter alleges that she suffers from a serious medical condition – "intense and debilitating migraines."[13] On April 24, 2017, Carter "became very ill at school and became sick in the ladies restroom."[14] That same day Carter spoke to a physician who treated her.[15]

---

motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).

[6] R. Doc. 1 at 2.

[7] *Id.* Over the summer of 2016, Carter alleges that she reached out to principal Burns to inform her that she would need scheduling accommodations to take care of her son who has epilepsy. *Id.* at 3. Carter states that during this conversation Burns did not inform her of her rights under the FMLA nor was she told to discuss the issue with human resources. *Id.* On the record before the Court, however, Carter never attempted to take FMLA leave on account of her son's epilepsy nor has she provided any evidence of these communications. Therefore, these alleged facts cannot support her FMLA claim.

[8] R. Doc. 1 at 3.

[9] *Id.*

[10] *Id.* at 4.

[11] R. Doc. 15 at 3.

[12] R. Docs. 8 at 5; 37-1 at 3. Carter alleges that her assignment to this class was "motivated in part by her request to the Assistant Principal that she be excused for a certain number of days due to her son's serious medical condition, specifically, epilepsy." R. Doc. 1 at 4. Again, Carter has not provided any evidence to support this claim or shown how her son's epilepsy relates to the claims brought before this Court.

[13] *Id.* at 5.

[14] *Id.*

[15] *Id.*

On April 25, 2017, Carter did not return to work and alleges that she called the School Board multiple times and faxed her doctor's paperwork to the School Board.[16] She sent the paperwork for "Sabbatical Medical Leave" and "Extended Sick Leave" to her doctor.[17] Dr. Gerald Sparks filled out the "Medical Form for Extended Sick Leave" which requested that Carter be allowed leave from April 25, 2017, to May 24, 2017.[18] In his attached letter, Sparks stated:

> It is my medical opinion that Erin "Erin" Carter requires extended sick leave due to intractable migraines. She is pending further treatment with the specialist and is currently unable to work. Projected return to work date May 24, 2017[.] If you have any questions or concerns, please don't hesitate to call.[19]

The following day, April 26, 2017, Carter sent a letter to Burns stating that she had become seriously ill and could not work, but had secured a substitute for her classes.[20]

On April 27, 2017, associate superintendent Peter Jabbia reviewed Carter's request for extended sick leave and determined that she did not qualify under La. R.S. 17:1202.[21] On April 28, 2017, Carter followed up by email requesting a confirmation of the receipt of her request.[22] On May 1, 2017, Amy Ortiz in human resources emailed Carter informing her of Jabbia's decision that she did not qualify for sick leave, but that she *did* qualify for medical leave without pay.[23] Ortiz attached the application for leave without pay to the email, but Carter did not fill it out.[24]

On May 4, 2017, Carter sent an email to Ortiz, Burns, Jabbia, superintendent W.L. "Trey" Folse, assistant superintendent Michael Cossé, and Regina Sanford requesting a review of the denial of her request for extended sick leave and attaching additional medical documentation.[25]

---

[16] R. Docs. 1 at 5; 41-1 at 8.
[17] R. Doc. 1 at 5.
[18] R. Docs. 1 at 6; 37-3 at 5.
[19] R. Doc. 37-3 at 6.
[20] R. Doc. 1 at 6.
[21] R. Docs. 37-3 at 2; 37-3 at 4.
[22] R. Doc. 37-3 at 9.
[23] R. Doc. 1 at 6.
[24] R. Docs. 37-2 at 2; 37-3 at 2. *See also* R. Doc. 41-1 at 1 ("Carter failed to sign the offer.").
[25] R. Docs. 1 at 6; 37-3 at 7-8.

She wrote, "It was very disheartening to receive the email I received Monday. This week alone I have had a neurology appointment, 2 days at Children's Hospital, and a psychology appointment."[26]

On May 10, 2017, Jabbia reviewed the second request for paid leave and denied it.[27] Carter received another email from Ortiz explaining that her condition did not meet the requirements for extended sick leave, but she was entitled to leave without pay.[28] Specifically, the email stated: "Although you are not eligible for extended sick leave based on the information received, you are eligible for a medical leave without pay. If you are unable to return to work please complete the attached application and return [it] to Human Resources."[29] Carter never submitted the request for leave without pay.[30] Therefore, the School Board considered her to have taken an unauthorized leave of absence starting on April 25, 2017.[31] Defendants allege that Burns attempted to contact Carter on multiple occasions without success.[32]

Folse sent a "Job Assurance" letter to Carter stating that she would be employed for the 2017-2018 school year.[33] For the week of May 16, 2017, Carter informed Burns and the assistant principal that she would be unable to work due to her medical condition.[34] On May 24, 2017, Carter was referred to the insurance department to help her fill out disability paperwork.[35]

---

[26] R. Doc. 37-3 at 7.
[27] *Id.* at 2.
[28] R. Docs. 8 at 2-3; 37-3 at 2.
[29] R. Docs. 37-3 at 7; 41-1 at 2.
[30] R. Docs. 8 at 6; 41-1 at 1.
[31] R. Doc. 37-2 at 2.
[32] R. Doc. 37-4 at 5. Carter disputes this fact as unsupported by evidence. R. Doc. 41-1 at 1.
[33] R. Docs. 1 at 7; 8 at 9.
[34] R. Doc. 1 at 7.
[35] *Id.* at 7-8.

On June 6, 2017, a letter was allegedly sent to Carter informing her of a June 13, 2017 just-cause hearing to determine whether she should be terminated.[36] Carter alleges that she never received the letter, and, as a result, did not attend the hearing.[37] On June 13, 2017, Burns sent a letter to Folse recommending Carter's termination for failure to appear at the hearing.[38] Burns also wrote that Carter should be terminated because she was on an "[u]nauthorized leave of absence – since April 25, 2017," she had a "[n]on-sanctioned school fundraiser – for dance team without administrative approval," and she struggled with "[g]radebook compliance – multiple issues regarding the number of grades and lack of grades; inconsistency."[39] It was also recommended that a second administrative hearing be held to investigate further and review Carter's status as an employee.[40]

Cossé wrote to Carter setting another just-cause hearing on June 26, 2017.[41] Carter attended the hearing, conducted by Cossé, which investigated Carter's "unauthorized leave, grading irregularities, and mishandling of a school fundraiser."[42] After the hearing, Cossé wrote a letter to Folse recommending Carter's termination from employment while giving her the right

[36] R. Docs. 1 at 8; 37-4 at 1, 5. The letter is referenced in contemporaneous correspondence in the record but is not itself a part of the record.

[37] R. Doc. 1 at 8.

[38] R. Docs. 1 at 8; 37-4 at 5.

[39] R. Doc. 37-4 at 5. The mishandling of the dance fundraiser allegedly involved parents turning in money to the school's front office instead of directly to Carter. *See id.* at 14-16.

[40] R. Docs. 37-2 at 3; 37-4 at 2.

[41] R. Docs. 1 at 9; 37-4 at 4.

[42] R. Doc. 37-4 at 2. On July 12, 2017, Carter wrote to Cossé "that the hearing that occurred on June 26th did not include any claim or assertion of poor performance. I have not ever been told or accused of poor performance." *Id.* at 11. Carter reiterates this position in her opposition to summary judgment, stating that she was "NEVER told, informed, accused of, alleged poor performance. Defendant's has [*sic*] not provided documentation or evidence to support allegation. These are false claims." R. Doc. 41-1 at 1. Carter demanded her right to a hearing on this specific issue. R. Doc. 37-4 at 11. On July 17, 2017, Cossé responded that "poor performance was in fact discussed in your hearing of June 26, 2017 regarding grading irregularities and mishandling of a fundraiser under your responsibility." *Id.* at 10. Carter admits in her opposition that "Michael Cosse questioned the fundraiser and gradebook stating those were 'Side Items,'" but she maintains that he "[n]ever mentioned poor performance." R. Doc. 41-1 at 5-6.

to resign by July 5, 2017.[43] Folse accepted the recommendation that Carter should be terminated and notified her.[44] Upon Carter's failure to resign, she was officially terminated on July 5, 2017.[45]

On March 15, 2018, Carter received a right-to-sue letter from the Equal Employment Opportunity Commission after she exhausted her administrative remedies.[46] Carter has not responded to Defendants' interrogatories and request for production of documents served on December 19, 2019.[47] In her opposition, Carter asserts that "[o]n August 27, 2020, Plaintiff, proceeding Pro se, submitted 84 pages of evidence to the Courts and Defendant's [*sic*], as well as a Plaintiff's Witness List and Exhibit Lists, which may be called at trial on this matter."[48] Carter did file her witness and exhibit list on August 28, 2020,[49] but there were no documents or evidence attached to this submission and the "84 pages of evidence" appear nowhere else in the summary-judgment record or on the Court's docket.

## II. PENDING MOTION

Defendants argue that Carter cannot prevail on either of her claims because she cannot show she was denied an FMLA request for medical leave without pay or suffers from a disability under the ADA.[50] They contend that Carter's failure to fill out the form for medical leave without pay left her in an unauthorized-leave status for over a month.[51] Combining such absence with her poor performance, gradebook issues, and mishandling of a school fundraiser, Defendants argue that termination was justified.[52] They state that Carter cannot recover under the FMLA because

[43] R. Docs. 1 at 9; 8 at 10; 37-4 at 2.

[44] R. Doc. 37-4 at 2, 7.

[45] *Id.* at 8-9.

[46] R. Doc. 15 at 3.

[47] R. Doc. 37-1 at 2. Carter acknowledges that "there remain outstanding responses and answers due since December 19, 2019. Plaintiff is aware there are responses and answers due [from] both parties." R. Doc. 41-1 at 7.

[48] R. Doc. 41 at 4. *See also* R. Doc. 41-1 at 7, 9.

[49] R. Doc. 33.

[50] R. Doc. 37-1 at 2.

[51] *Id.*

[52] *Id.* at 2-3.

she has not proven that she has a "serious health condition" as defined by that statute.[53] Similarly, Defendants contend that she cannot present a *prima facie* case of discrimination under the ADA because she has not proven that she has a disability, was terminated because of the disability, and was treated less favorably than a non-disabled employee.[54]

In opposition, Carter argues that summary judgment is premature because discovery is ongoing and there are genuine issues of material fact.[55] Specifically, Carter points out that Defendants have not deposed Burns nor attached an affidavit signed by her.[56] She asserts that the evidence must be construed in the light most favorable to the nonmoving party and argues that she has submitted evidence to the Court that would defeat a motion for summary judgment.[57]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the

[53] *Id.* at 9-10.
[54] *Id.* at 6-8.
[55] R. Doc. 41-1 at 7.
[56] *Id.* at 11.
[57] *Id.* at 7, 11.

conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248. The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue,

the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

**1. Carter does not have a viable claim for interference or retaliation under the Family and Medical Leave Act.**

Carter alleges that Defendants interfered with her rights under the FMLA by failing to inform her of her statutory rights and retaliated against her for attempting to assert such rights.[58] The FMLA "entitles eligible employees to take up to 12 work weeks of unpaid leave per year." *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 34 (2012). The FMLA was enacted in part to remedy "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). When a serious health condition "makes the employee unable to perform the functions of the position of such employee," the employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period." *Id*. § 2612(a)(1)(D). "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a)(1). To establish a *prima facie* case of interference under the FMLA, the employee must show (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the benefits to which she was entitled under the FMLA. *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018).

[58] R. Doc. 1 at 10-12.

Carter has not shown she was entitled to FMLA leave because she has not proven she has a "serious health condition." The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves … continuing treatment by a health care provider." 29 U.S.C. § 2611(11). "Continuing treatment" is defined by examples in the Code of Federal Regulations. 29 C.F.R. § 825.115. For instance, continuing treatment for a chronic condition requires only two periodic visits per year to a health care provider. *Id.* § 825.115(c). "Migraine headaches are considered a 'serious health condition' for purposes of the FMLA." *Graham v. BlueCross BlueShield of Tenn., Inc.*, 521 F. App'x 419, 422 (6th Cir. 2013). However, there still must be a showing of continuing treatment. *See, e.g., Garcia v. Delta Air Lines*, 2019 WL 659424, at *6 (S.D. Fla. Jan. 8, 2019) (holding physician's direction to take over-the-counter medications to treat migraines is insufficient to show continuing treatment). For example, a plaintiff's testimony, corroborated by her ex-husband's testimony, that she visited a medical clinic on a few occasions and received treatment over the phone was insufficient to show a continuing treatment plan for migraines. *See Justice v. Renasant Bank*, 2016 WL 6635638, at *5 (N.D. Miss. Nov. 9, 2016). The court observed that there was "no information concerning when these office visits took place or how often on a yearly basis they occurred." *Id.*

In the case at bar, Carter has not indicated that she has attempted to receive any additional treatment for her migraines. The record contains only the April 25, 2017 correspondence from Dr. Sparks. Therefore, Carter is missing proof of an essential element of her claim, namely, continuing treatment establishing that she has a serious health condition that would entitle her to FMLA leave.[59] Therefore, summary judgment is appropriate.

[59] Nor has she demonstrated the requisite length of any alleged incapacity resulting from her migraines to qualify them as a serious medical condition. *See* 29 C.F.R. § 825.115(a) ("a period of incapacity of more than three consecutive, full calendar days").

Further, when an employee asserts FMLA rights, "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d). "This regulation 'explicitly permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances.'" *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 789 (5th Cir. 2017) (quoting *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013)).

Even assuming Carter has a "serious health condition" as defined by the FMLA, Defendants cannot be accused of interfering with Carter's rights when they (twice) provided the necessary form to Carter to claim her right to unpaid leave.[60] It is undisputed that Carter failed to fill out and submit the form.[61] Employees are required to follow the customs and practices of their employers when asserting rights under the FMLA. "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. § 825.302(d). Such notice and procedural requirements "'serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations.'" *Acker*, 853 F.3d at 789 (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1009 (10th Cir. 2011)). The CBA governing Carter's employment requires that a "request for leave under [the family-leave section] must be in writing on an application form as provided by the Department of Human Resources."[62] Without the completion of its form, the School Board's assumption that Carter was taking an unauthorized leave of absence is justified.

[60] R. Docs. 1 at 6-7; 37-3 at 7-8.
[61] R. Docs. 8 at 6; 41-1 at 1.
[62] R. Doc. 37-3 at 17.

Where Defendants clearly outlined the steps Carter needed to take an FMLA leave of absence and provided the means to do so, the only obstacle to obtaining such authorization was Carter's failure to fill out the form.

"Generally, FMLA leave is unpaid leave." 29 C.F.R. § 825.207(a). "[N]othing in this subchapter shall require an employer to provide *paid* sick leave or *paid* medical leave in any situation in which such employer would not normally provide any such paid leave." 29 U.S.C. § 2612(d)(2)(B) (emphasis added). The CBA does not provide greater rights than those outlined in the FMLA. In the case at bar, the CBA states that "[a]n employee will be entitled to family and medical leave in accordance with the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., as amended from time to time."[63] Carter was offered her full rights under the FMLA, and it was her inaction in not completing the form that resulted in the loss of such rights. Therefore, Carter has not sustained her summary-judgment burden with respect to her claims of interference or retaliation in violation of her FMLA rights.

**2. Carter cannot prove she has a "disability" as defined by the Americans with Disabilities Act.**

"The ADA is a federal antidiscrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 161 (5th Cir. 1996). The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to ... discharge," among other things. 42 U.S.C. § 12112(a). Such discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Id.* § 12112(b)(5)(A).

[63] *Id*. at 16.

To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove (1) she has a disability, or was regarded as disabled; (2) she was qualified for the job; and (3) she was subject to an adverse employment decision on account of her disability. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)).

The ADA defines a "disability," with respect to an individual, as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment …." 42 U.S.C. § 12102(1). A court looks to whether an individual's impairment "substantially limits" her "ability 'to perform a major life activity as compared to most people in the general population.'" *Cannon*, 813 F.3d at 591 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Carter asserts claims under the ADA for wrongful termination and for failing to accommodate her by (1) not allowing her to take time off and (2) not providing her with a paraprofessional to assist her in the classroom.[64] Defendants are correct in asserting that Carter has not provided evidence of a disability under the ADA. Again, in her opposition, Carter refers to "84 pages of evidence" as support for her claims, but the Court has searched the record in vain for this evidence; it is nowhere to be found. Besides the single letter from Dr. Sparks, there is no evidence in the record about Carter's migraines, much less evidence that her migraines prevent her from performing a "major life activity as compared to most people in the general population." The

[64] R. Doc. 15 at 2-3.

School Board offered Carter assistance in filling out her disability paperwork,[65] but there is no indication she took any further steps. While medical corroboration is not required at the summary-judgment stage, there must be some level of proof to support Carter's claimed disability. *Williams v. Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 448 (5th Cir. 2018). The Fifth Circuit held an individual did meet her summary-judgment burden to show an issue of genuine fact as to whether she had a disability when she submitted a detailed declaration outlining "her diagnoses, treatments, and symptoms since childhood, and elaborat[ing] on some of the recent effects of her ailments." *Id.* at 447. Carter does not provide any evidence approaching this level of detail besides a bare-bones allegation in her unsworn amended complaint. She does not even provide her own sworn affidavit in a minimal effort to present some evidence that could create a genuine dispute. Without any evidence in the record that her migraines rise to the level of a disability, Carter has not borne her burden on summary judgment with respect to an essential element of her claim for discrimination under the ADA.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of defendants St. Tammany Parish School Board and Amy T. Burns for summary judgment (R. Doc. 37) is GRANTED.

IT IS FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 29th day of March, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

[65] R. Doc. 1 at 7-8.